J-S59023-11

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ELTON EUGENE HILL, | : | |
| | : | |
| Appellant | : | No. 646 MDA 2011 |

Appeal from the PCRA Order December 27, 2006,
Court of Common Pleas, Dauphin County,
Criminal Division at No. CP-22-CR-0001407-1998

BEFORE:  PANELLA, DONOHUE and ALLEN, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED JULY 10, 2015**

Appellant, Elton Eugene Hill ("Hill"), appeals the order dated December 27, 2006 denying his petition for relief pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. § 9541 *et seq.* ("PCRA").  Pursuant to an opinion issued on November 21, 2014, the Supreme Court reversed this Court's previous decision.  ***Commonwealth v. Hill***, 104 A.3d 1220 (Pa. 2014).  On remand, we affirm the trial court's order.

In our prior decision, we set forth the following relevant factual and procedural history of this case:

> In the early morning of April 8, 1998, intruders broke into the home of Mark and Kim Davis and threatened the Davis' young children with a baseball bat.  One of the intruders, James Purcell ("Purcell") raped Ms. Davis.  Mr. Davis was able to subdue Purcell and call the police.  He left his teenage son to guard Purcell while he ran outside to pursue Hill, age 17 at the time, whom he saw sitting in a car at the

bottom of his driveway. Mr. Davis followed Hill in an attempt to get a license plate number, but Hill turned his car around and attempted to run Mr. Davis off the road.

On April 21, 1998, detectives from the Derry Township Police Department, including Detective Daniel Kelly ("Detective Kelly"), arrived at Hill's parents' home where Hill resided. Detective Kelly asked Hill to meet him at the police station. Upon his arrival at the police station, the police escorted Hill to an interrogation room to await the arrival of his parents. When they arrived and joined Hill, Detective Kelly read a form containing his **Miranda**[1] rights and gave Hill and his parents a chance to consult privately. Detective Kelly then presented them with a two-part form, the top part entitled "Constitutional Rights (Adults)" and the bottom "Waiver of Rights Miranda Warnings." Hill's parents signed the top part of the form but not the bottom part, and Hill did not sign either part. Detective Kelly testified, however, that both Hill and his parents verbally agreed to consent to an interview without the presence of an attorney. N.T., 4/25/06, at 106. At the conclusion of the interview, Detective Kelly arrested Hill, and three days later (on April 24, 1998), the Commonwealth filed a criminal information charging Hill with various criminal offenses.[2] Hill's parents then retained an attorney, Herbert Goldstein ("Attorney Goldstein").

On April 25, 1998, Hill was transported from county prison back to the police station. Attorney Goldstein met with Hill and advised him that he was about to be taken downstairs for a polygraph examination and that he should tell the truth.[3] Attorney Goldstein, a representative of the district attorney's office, and Detective Joseph Steenson ("Detective Steenson"), the polygraph examiner, met to determine and agree on the questions to be asked during the polygraph examination. At the outset of the polygraph examination, with Detective Kelly present (but without Attorney Goldstein), Detective Steenson read

Hill a form that contained a recitation of his ***Miranda*** rights, which Hill then initialed and signed. That form, however, has apparently been lost and is not part of the certified record on appeal. Detective Kelly soon left the room and the polygraph examination proceeded to conclusion. Attorney Goldstein sat outside the examination room for some period of time, but went back to his office prior to the completion of the polygraph examination and did not return.

At the conclusion of the polygraph examination, Detective Steenson asked and received a short written statement from Hill. After a break, Detective Kelly re-entered and Detective Steenson left, at which time Detective Kelly proceeded to interrogate Hill. Detective Kelly did not ask questions from those approved by Attorney Goldstein prior to the polygraph test, but rather testified that his interrogation involved a comparison between Hill's answers during the polygraph test with those made during the prior April 21, 1998 interrogation with his parents present. ***Id.*** at 122. At trial, Detective Kelly testified that Hill began to cry uncontrollably, made incriminating statements, and drew diagrams of the crime scene. N.T., 11/18/98, at 283 ff., 297-98.

On November 20, 1998, a jury found Hill guilty of the above-referenced crimes. On March 15, 1999, the trial court sentenced Hill to serve an aggregate term of not less than 186 months and not more than 1008 months of incarceration in a state correctional institution. On March 7, 2001, this Court affirmed Hill's judgment of sentence, and on November 7, 2001, our Supreme Court denied Hill's petition for allowance of appeal.

On May 29, 2002, Hill filed a *pro se* PCRA petition. In February 2003, appointed counsel filed a petition to withdraw. On January 29, 2004, the PCRA court dismissed Hill's *pro se* PCRA petition, but after an appeal by Hill's privately retained counsel, on April 7, 2005, this Court vacated the PCRA court's dismissal

of Hill's *pro se* PCRA petition.[4] On April 25, 2006 and July 27, 2006, the PCRA court held evidentiary hearings, and on December 27, 2006 the PCRA court again dismissed Hill's PCRA petition. On February 9, 2007, Hill's counsel filed a statement of matters complained of on appeal, but failed to docket an appeal. On November 15, 2010, Hill filed a new *pro se* PCRA petition seeking reinstatement of his appellate rights *nunc pro tunc*. On November 22, 2010, the PCRA court appointed Hill new counsel, and on March 23, 2011, reinstated Hill's right to file an appeal to the December 2006 dismissal of his PCRA petition.

---

[1] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

[2] These charges included burglary, 18 Pa.C.S.A. § 3502, aggravated assault, 18 Pa.C.S.A. § 2702, simple assault, 18 Pa.C.S.A. § 2701, possession of an instrument of crime, 18 Pa.C.S.A. § 907, possession of a prohibited weapon, 18 Pa.C.S.A. § 908, criminal conspiracy, 18 Pa.C.S.A. § 903, and recklessly endangering another person, 18 Pa.C.S.A. § 2705.

[3] Attorney Goldstein testified that he indicated to Hill that "this is a lie detector test and you take the test and you tell the truth." ***Id.*** at 17. Hill similarly testified that Attorney Goldstein's "exact words were 'Just tell the truth and you will be fine. Go downstairs with the officer and I'll see you later." ***Id.*** at 71.

[4] Of relevance to the present appeal, in response to Hill's claim that his constitutional rights to counsel had been violated, we indicated that "the state of the record has not been developed sufficiently" and that "[Hill] must be afforded the opportunity to fully develop this claim with the assistance of counsel." ***Commonwealth v. Hill***, No. 349 MDA 2004 (Pa. Super. April 7, 2005) (unpublished memorandum).

J-S59023-11

***Commonwealth v. Hill***, 42 A.3d 1085 (Pa. Super. 2012), *reversed*, 104 A.3d 1220 (Pa. 2014).

On March 1, 2012, this Court reversed the trial court's order denying Hill's requested PCRA relief, ***id.***, but on November 21, 2014, our Supreme Court reversed and remanded this case for further consideration in accordance with its decision. ***Commonwealth v. Hill***, 104 A.3d 1220 (Pa. 2014). On remand, we again consider the two issues raised by Hill on appeal:

> 1. Whether [Hill] was deprived of his constitutional right to effective assistance of counsel when his trial counsel failed to file a motion to suppress [Hill's] statement on 21 April 1998 as a violation of ***Miranda*** and its progeny.
>
> 2. Whether [Hill] was deprived of his constitutional right to effective assistance of counsel when his trial attorney abandoned [Hill] at a critical stage in the proceedings and when trial counsel failed to file a motion to suppress [Hill's] post-polygraph statement on 25 April 1998 as a violation of [Hill's] right to counsel under the Sixth Amendment to the United States Constitution as well as Article I Section 9 of the Pennsylvania Constitution.

Hill's Supplemental Brief at 4. In accordance with this Court's order dated December 31, 2014, the parties have filed supplemental briefs addressing these issues in light of the Supreme Court's decision.

When reviewing an order of a PCRA court, our standard of review is limited to whether the determinations of the PCRA court are supported by the evidence of record and free of legal error. ***Commonwealth v. Lesko***,

- 5 -

923 A.2d 1119, 1124 (Pa. 2007). Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level. ***Commonwealth v. Koehler***, 36 A.3d 121, 131 (Pa. 2012) (citing ***Commonwealth v. Colavita***, 993 A.3d 874, 886 (Pa. 2010)). The PCRA court's credibility determinations, when supported by the record, are binding on this Court. ***Commonwealth v. Medina***, 92 A.3d 1210, 1214-15 (Pa. Super.) (quoting ***Commonwealth v. Spotz***, 18 A.3d 244, 259 (Pa. 2011)), *appeal granted*, 105 A.3d 658 (Pa. 2014).

Counsel is presumed to be effective, and the defendant bears the burden of proving ineffectiveness. ***Burt v. Titlow***, __ U.S. __, __, 134 S.Ct. 10, 17 (2013) (citing ***Strickland v. Washington***, 466 U.S. 668, 689-90 (1984); ***Commonwealth v. Ligons***, 971 A.2d 1125, 1137 (Pa. 2009) (citing ***Commonwealth v. Cooper***, 941 A.2d 655, 664 (Pa. 2007)). The test for determining the ineffectiveness of counsel is the same under both the United States and Pennsylvania Constitutions. ***Commonwealth v. Williams***, 936 A.2d 12, 19 (Pa. 2007). To obtain relief on a claim of ineffective assistance of counsel, an appellant must show (1) that there is merit to the underlying claim; (2) that counsel had no reasonable basis for his/her course of conduct; and (3) that the ineffectiveness resulted in prejudice to the appellant. ***See, e.g.***, ***Commonwealth v. Rega***, 933 A.2d 997, 1018 (Pa. 2007). The failure to satisfy any one of the prongs of the

test for ineffective assistance of counsel requires rejection of the claim. ***Commonwealth v. Pierce***, 786 A.2d 203, 213 (Pa. 2001). Trial counsel will not be deemed ineffective for failing to pursue a meritless claim. ***Commonwealth v. Pursell***, 724 A.2d 293, 304 (Pa. 1999).

For his first issue on appeal, Hill contends that while at the Derry Township police station on April 21, 1998, he was subjected to a custodial interrogation that occurred in the absence of a valid waiver of his ***Miranda*** rights. Hill's Supplemental Brief at 24. Hill notes that neither he nor his parents completed the written waiver of rights form, as only some portions of the form were signed before Lieutenant Kelly began an interrogation. ***Id.*** at 28. In particular, there is no signature in response to the question, "[k]nowing these rights, are you willing to answer any questions without the presence of a lawyer?" N.T., 4/25/2006, at 110.

As a general rule, because of the inherently coercive nature of police custodial interrogation, statements elicited from an accused in that environment are inadmissible unless the accused was informed of and voluntarily waived his privilege against self-incrimination and the right to counsel. ***Miranda v. Arizona***, 384 U.S. 436 471–79 (1966); ***Commonwealth v. DeJesus***, 787 A.2d 394, 401–03 (Pa. 2001); ***Commonwealth v. Kunkle***, 79 A.3d 1173, 1179-80 (Pa. Super. 2013) ("Statements made during custodial interrogation are presumptively involuntary, unless the accused is first advised of her ***Miranda*** rights.")

(quoting *Commonwealth v. Williams*, 941 A.2d 14, 30 (Pa. Super. 2008)), *appeal denied*, 2015 WL 1997695 (Pa. April 22, 2015). Waiver is made voluntarily if the decision to make it is the product of a free and unconstrained choice. *Commonwealth v. O'Bryant*, 388 A.2d 1059, 1062 (Pa. 1978).

In determining whether a waiver is valid, a suppression court looks to the totality of the circumstances surrounding the waiver. *DeJesus*, 787 A.2d at 402–03; *Commonwealth v. Lyons*, 79 A.3d 1053, 1066 (Pa. 2013), *cert. denied sub nom.*, *Lyons v. Pennsylvania*, 134 S. Ct. 1792 (2014). This Court recently summarized relevant Pennsylvania law regarding the waiver of *Miranda* rights as follows:

> We begin by noting that "[i]t is the Commonwealth's burden to establish whether [a defendant] knowingly and voluntarily waived his *Miranda* rights. In order to do so, the Commonwealth must demonstrate that the proper warnings were given, and that the accused manifested an understanding of these warnings." [*Commonwealth v.*] *Baez*, 21 A.3d [1280,] 1283 [(Pa. Super. 2011] (quoting *Commonwealth v. Eichinger*, 591 Pa. 1, 915 A.2d 1122, 1135–36 (2007) (citation omitted)). The basic precepts regarding what constitutes a sufficient waiver of *Miranda* rights have been defined through a line of cases beginning with *Commonwealth v. Bussey*, 486 Pa. 221, 404 A.2d 1309, 1314 (1979) (plurality opinion). In that plurality opinion, our Supreme Court rejected the more lenient Federal constitutional rule that a defendant can *implicitly* waive his *Miranda* rights, instead holding that "an *explicit* waiver is a mandatory requirement." *Id.* at 1314 (emphasis added); *see also North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d

286 (1979) (holding that under Federal constitutional law, an implicit waiver of *Miranda* rights could be found where an accused expresses an understanding of his rights and gives a statement without expressly waiving the same). Our Supreme Court elaborated that an "explicit waiver" meant "an outward manifestation of a waiver such as an oral, written or physical manifestation." *Id.* at 1314 n.11.

In *Commonwealth v. Hughes*, 536 Pa. 355, 639 A.2d 763 (1994), the Court applied *Bussey* without acknowledging its limited precedential value as a plurality decision. There, the Court found that the defendant had "explicitly waived" his *Miranda* rights by "clearly and unequivocally" indicating that he understood his rights and then responding to the officer's questions. *Id.* at 770. In other words, the defendant's conduct "clearly manifested an intent to waive his rights." *Id.* Similarly, in *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003), our Supreme Court held that the defendant's twice stating he understood his *Miranda* rights after they were read to him, and answering questions immediately thereafter, sufficiently "manifested the intent to waive his rights." *Id.* at 844 n.13. Finally, in *Baez*, this Court relied on all of the above-cited Supreme Court cases in concluding that the defendant had sufficiently manifested his intent to waive his *Miranda* rights where those rights were read to him, he indicated one time that he understood them, and then he answered the questions asked by police. *Baez*, 21 A.3d at 1286.

*Commonwealth v. Cohen*, 53 A.3d 882, 885-86 (Pa. Super. 2012).

The PCRA court reached the following findings of fact relevant to whether Hill waived his *Miranda* rights before the interrogation on April 21, 1998:

(3) The police did not begin questioning [Hill] until his parents arrived.

- 9 -

(4) After [Hill's] parents arrived, Lieutenant Daniel Kelly read the **Miranda** warnings to [Hill] and his parents. The police then withdrew and gave [Hill] time alone to consult with his parents.

(5) After [Hill] had consulted with his parents alone for about fifteen (15) minutes, [Hill's] father summoned the police officers back into the room. [Hill] and his parents indicated that they would consent to an interview of [Hill]. [Hill] then orally indicated that he understood his **Miranda** rights and was willing to submit to questioning. Lieutenant Kelly inadvertently failed to obtain a signed waiver from [Hill].

Trial Court Opinion, 12/27/06, at 2-3. Based upon these findings of fact, the PCRA court concluded that Hill "was properly advised of his rights by the police and thereafter knowingly, intelligently and voluntarily consented" to questioning. **Id.** at 5.

The certified record supports these findings of fact. At the PCRA hearing, Lieutenant Kelly testified as follows:

Q. Did you read that warning form to Mr. and Mrs. Hill in the presence of their son? Did you give them private time to discuss the matter?

A. Yes, I did.

Q. What happened – by the way, how long was that private time?

A. I would estimate about 15 to 20 minutes.

Q. Where you and the other officers when they were having their quiet time?

- 10 -

A.    We were across the hallway in our office.  I believe Mr. Hill came out and got us when they were done with their quiet time.

Q.    Who was in the room during the time when you and other officers left the room where [Hill] was?

A.    Just [Hill] and his parents, his mother and father.

Q.    What happened after the elder Mr. Hill summoned you back into the room?

A.    Myself and Detective Coulter went back into the room.  They indicated that they understood the **_Miranda_** rights and that they were willing to let their son speak to – with us.  It was at that time on the top portion of that form were it says, I believe, Constitutional Rights and in parenthesis it says "adult," that portion is for the concerned adult to sign that they understand their constitutional rights and they consent to the interview.

      I had Mr. and Mrs. Hill – I read that to them and they did understand their rights and they signed.  The Xs you see beside their names on the top portion of that form are Xs that I myself had put on those lines prior to walking back into the room.  When they signed, it was my error.  I failed to have them sign again on the bottom.  It is kind of redundant, but that's the way the form was.  And I failed to have them sign the second time at the bottom.

Q.    You put the tiny little Xs on the line where the person is supposed to sign?

A.    Correct.

Q.    After you read all those rights to [Hill], the II – after their quiet time, did he gave [sic] an indication as to whether or not he was willing to speak to you on this subject?

A. Yes, he did.

Q. What did he indicate?

A. He indicated that he understood his rights and that he would speak without the presence of an attorney.

Q. At any point during the interview on April 21, did [Hill] invoke his rights to silence?

A. Never.

Q. Did he invoke his right to counsel?

A. No, never.

Q. Did he bring up – use the word "attorney" at any point?

A. No, he never requested – it was never requested, never mentioned.

Q. With regards to his parents, at no time during the April 21 interview did his parents ever indicate a desire to end the interview or have an attorney present?

A. No, they never did.

N.T., 4/25/2006, at 101-03; **see also** N.T., 11/18/1998, at 269.

Hill and his parents offered strikingly different testimony regarding the events of April 21, 1998 at the PCRA evidentiary hearing. Hill testified that he and his parents asked for an attorney but the police summarily denied the request, telling them Hill did not need one. **Id.** at 67. Hill also testified that because he thought he needed an attorney, he did not sign the waiver form. **Id.** Hill's mother similarly testified that the police informed them that

they did not need an attorney and proceeded to interrogate her son. ***Id.*** at 57-58. Hill's father testified that he signed the top portion of the waiver form but refused to sign the bottom portion because he insisted that his son needed a lawyer before any questioning. ***Id.*** at 94. He testified that he put "X"s on the form next to any line requiring a signature for the waiver of ***Miranda*** rights, indicating his intent to demonstrate an objection to the interview without an attorney present (and to prevent a signature from being added by someone else at a later time). ***Id.*** at 95.

In its findings of fact, the PCRA court found Lieutenant Kelly's testimony regarding the events of April 21, 1998 to be more credible than that of Hill and his parents. As indicated hereinabove, the PCRA court makes the credibility determinations and, so long as supported by the certified record, they are binding on this Court. ***Medina***, 92 A.3d at 1214-15. Because Lieutenant Kelly's testimony amply supports the PCRA court's findings of facts, they are binding here and establish that Hill sufficiently manifested his intent to waive his ***Miranda*** rights on April 21, 1998. Hill's first issue on appeal thus lacks any merit.

For his second issue on appeal, Hill argues that in connection with the polygraph examination on April 25, 1998, he executed only a limited waiver of his constitutional right to counsel restricted solely to the polygraph examination itself, and that as a result the post-polygraph interrogation was neither consensual nor voluntary. Hill's Supplemental Brief at 22.

The United States Supreme Court addressed this issue in its 1982 decision in **Wyrick v. Fields**, 459 U.S. 42 (1982) (*per curiam*).[1] In **Wyrick**, the Supreme Court reversed a decision of the Eighth Circuit Court of Appeals that effectively established a bright line rule that defendants must always be re-advised of their **Miranda** rights before a post-polygraph interrogation commences. **Id.** at 47. In **Wyrick**, the defendant requested the polygraph examination, the post-polygraph interview was conducted by the same person who had conducted the polygraph (after he had merely switched off the polygraph machine), and the written waiver he signed included language much broader than typically contained in a standard **Miranda** waiver. **Id.** at 43-47. Specifically, in addition to the standard **Miranda** warnings, the waiver form also advised the defendant as follows: "If you are now going to discuss the offense under investigation, which is rape, with or without a lawyer present, you have a right to stop answering questions at any time or speak to a lawyer before answering further, even if you sign a waiver certificate." **Id.** at 44. The Supreme Court disagreed with the Eighth Circuit's suggestion that the government should have reminded the defendant of his **Miranda** rights before proceeding to any post-test

---

[1] Although **Wyrick** involved the issue of waiver of the defendant's Fifth Amendment right to counsel, in light of the Supreme Court's 'subsequent decisions in **Patterson v. Illinois**, 487 U.S. 285 (1988) and **Montejo v. Louisiana**, 556 U.S. 778 (2009), the decision in **Wyrick** applies equally to possible waivers of a defendant's Sixth Amendment right to counsel as well.

questioning. *Id.* at 46-47. The Supreme Court ruled that whether Fields had waived his right to counsel at a post-test examination had to be based upon the "totality of the circumstances," and that the facts as presented demonstrated that new *Miranda* warnings were not necessary. *Id.* at 47-48.

In our prior decision in this case, we focused our attention principally on the breadth and scope of the waiver signed by Hill prior to the polygraph examination, following a number of federal and state rulings interpreting and applying *Wyrick*. *See, e.g.*, *United States v. Gillyard*, 726 F.2d 1426 (9th Cir. 1984) (standard *Miranda* warnings, rather than more expansive language in the *Wyrick* warning, did not permit post-polygraph interrogation); *United States v. Johnson*, 816 F.2d 918, 921 n.4 (3d Cir. 1987) ("[A]ppellant signed waiver forms which strongly suggested that the waiver of rights was applicable only to the polygraph examination."); *United States v. Leon–Delfis*, 203 F.3d 103, 111-12 (1st Cir. 2000) (despite signing two waivers, appellant "did not mean he knowingly and intelligently waived his rights for post-polygraph questioning."); *Monroe v. Coplan*, 2007 WL 3264853, at *10 (Kan. App. October 11, 2007) ("Unlike the situation in *Wyrick*, the waiver in the present case did not make it clear that Mr. Downing would be subject to further questions after finishing the polygraph examination."). We considered it significant that Attorney Goldstein pre-approved the questions to be asked during the polygraph

examination, as this effort largely served to establish the scope of the examination, and thus the scope of the waiver executed in connection therewith.

In reversing our decision and remanding the case back to this Court, however, our Supreme Court emphasized that to give sufficient "heed to the High Court's teaching in *Wyrick*," our principle focus should be on the continuity of the interrogation at the conclusion of the polygraph examination. *Hill*, 104 F.3d at 1242.

> Thus, there is force in the Commonwealth's argument that the panel should have focused on factors such as the continuity of the interrogation on April 25th, a circumstance dispelling concerns of the staleness of the warnings, and the fact that, despite being expressly made aware of his rights (including the "right to have an attorney present to speak with before and during questioning if you so desire" … and acknowledging that he understood those rights, appellee never invoked them.

*Id.*

Regarding the continuity of the interrogation after Detective Steenson completed the polygraph examination, the PCRA court made the following relevant findings of fact:

> (11)  [Hill] executed a written waiver of his Miranda rights, although that written waiver cannot presently be located.
>
> (12)  [Hill] submitted to a polygraph examination and was informed by Detective Steenson that he had failed the examination.  Immediately after the polygraph examination, Detective Steenson and

- 16 -

> Lieutenant Daniel Kelly interviewed [Hill]. [Hill] made incriminating statements in this interview. The statements made to Detective Steenson and Lieutenant Kelly were part of the interview to which [Hill] submitted as part of the ***Miranda*** waiver.
>
> (13) [Hill] never invoked his right to silence or to counsel during the interview on April 25, 1998.
>
> (14) The police officers made no threats or promises to [Hill] before or during the interview.
>
> (15) Attorney Goldstein anticipated that the polygraph process would include a pre-test interview and a post-test interview, as was customary in such cases.
>
> (16) Attorney Goldstein did not insist on being present for all aspects of the polygraph process as he was aware that if he did so, the polygraph would not be administered. Attorney Goldstein determined that taking the polygraph was in his client's best interests based on [Hill's] assertion of innocence, and the facts of the case as outlined by [Hill] to his said counsel.
>
> (17) The pre-test and post-test interviews by Lieutenant Kelly and Detective Steenson were part of the polygraph process.

Trial Court Opinion, 12/27/06, at 2-3.

The testimony of Lieutenant Kelly at the PCRA hearing supports these findings of fact. N.T., 4/25/06, at 105-06, 117-19. Importantly, Lieutenant Kelly testified that Hill indicated that he understood his rights and did not, at any time on April 25 (before or after the polygraph examination), ask to end the questioning or request a lawyer. ***Id.*** at 106. Hill testified to the contrary, including that when Lieutenant Kelly began the post-polygraph

interrogation he (Hill) inquired regarding Attorney Goldstein's whereabouts and was informed that he was not at the police station. *Id.* at 73. At trial, Hill testified that Lieutenant Kelly ignored his request to have Attorney Goldstein present and continued to ask him questions. N.T., 11/19/1998, at 513. Again, however, it was within the PCRA court's province to make credibility determinations, and on this point the PCRA court credited Lieutenant Kelly's testimony over Hill's. *Medina*, 92 A.3d at 1214-15. We also note that at trial, Hill acknowledged that he understood that he had the right not to answer Lieutenant Kelly's questions and was free to stop the interrogation at any time. N.T., 11/19/98, at 608.

The PCRA court's findings of fact regarding the continuity of the post-polygraph interrogation, which are adequately supported by the certified record on appeal, are sufficient to provide a basis for the PCRA court's conclusion Hill knowingly, intelligently and voluntarily made his April 25, 1998 post-polygraph statement to Lieutenant Kelly. Trial Court Opinion, 12/27/06, at 5. Accordingly, based upon our standard of review, we will not disturb the PCRA court's determination that Hill's second issue on appeal is without merit and the PCRA court did not err in dismissing the PCRA petition for this reason.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/2015